Good morning, Your Honors. Eric Slepian on behalf of Alan Chavin. I'd like to attempt to reserve four minutes for rebuttal. This is a case involving Social Security disability benefits. Mr. Chavin has been requesting disability with an onset date of disability of December 18, 2003. He's subsequently been awarded benefits, but on the issues before you, we're asking that you vacate the decision of the judge finding Mr. Chavin not disabled during that prior period of time. There are a number of issues that we think require vacature of the decision of the ALJ. The first is in regard to the manner in which he handled the medical source opinion evidence. At the time, Mr. Chavin was diagnosed with severe multilevel degenerative disc disease of the cervical spine with severe stenosis and compromise of the nerves. He was in treatment with an orthopedic surgeon, and that orthopedic surgeon indicated that the level of pain and the restrictions and limitations would preclude sustained work activity. In particular, the physician's name is Dr. Rappaport, and he has a long history of treating Mr. Chavin. When the ALJ attempted to address the way to be afforded to the treating physician opinion in the decision on benefit, at page five of the decision, which appears at 22 of the record, the ALJ writes that Dr. Rappaport opined that the claimant did not suffer from impairments or pain that would preclude him from sustaining work activity on a regular and continuous basis. That's absolutely false. Dr. Rappaport's opinion is set forth at pages 241 to 246 of the record, and on April 3rd, 2007, he specifically states in item one that Mr. Chavin is unable to sustain an eight-hour day, five days a week, on a regular and consistent basis. That's 2007, right? He rendered the opinion in 2007. That's the only opinion Dr. Rappaport rendered as to residual functional capacity. The critical period is December of 2003, is that right? That's correct. Is he saying that he was disabled as of 2003? Is he saying that he's disabled as of 2007? As it's generally, I will be answering your question. I just want you to be aware that as it's generally handled in Social Security, is that if restrictions are assessed, if it's the same condition as it was back in 2003, it's presumed that it goes back. And in this case, it's absolutely the same. The MRIs, in fact, when you compare an 2003 MRI to an 2007 MRI, say there's no significant changes. There was no significant changes in Mr. Chavin's complaints. There was no significant Is there any evidence that as of 2003 or earlier that Dr. Rappaport thought that he was disabled? I don't believe Dr. Rappaport used those words at that point in time. Did Dr. Rappaport say anything specific in his 2007 report to indicate that he believed that he had now been disabled? He'd been seeing him for four years, and he had just come to the conclusion that he was disabled, but that that decision somehow applied to four years earlier. I don't believe so, Your Honor. But that wasn't that didn't seem to be the basis for the ALJs. That wasn't the reason that the ALJ rejected his testimony. He rejected the testimony because he said he never he thought it was conflicting potentially with his earlier statement, which there wasn't actually a medical statement made in, was it 2003 or 2004, where he said you might be able to get disability, right? Right. Dr. Rappaport did recommend that he apply for Social Security disability. But he didn't assess he didn't state what the restrictions were until 2007. But it's an odd case. So let me ask you something that troubles me, is you go along 2003, 2007, and then he gets disability awarded. Often we would remand to see if that additional evidence, which was Goldstein or whoever, that might have gotten him the additional determination that he was disabled we would often remand to say, well, does this change the ALJ's mind? But there's some question here as to whether that argument was waived or whether we could do whether we have the authority to do that in this case. Would you address that? Yes, Your Honor. One, I don't believe the argument was waived, as it was raised when we cited the case of Luna, which I believe was authored by Judge Clifton. And in that particular case, there was a subsequent application that was approved one day after the ALJ denial. And so it was remanded pursuant to sentence six. We are focusing on sentence four. We would like a remand under sentence four. That's an alternative argument that we have raised. But we believe that the failure to properly weigh medical source opinion evidence, which is a procedural error, which would require vacature of the decision, would also trigger the credit as true doctrine that applies in Social Security. Before I leave the subject, I'm still lost and there are multiple reports, so I may have made dates wrong, but what report from Dr. Rappaport are you focusing on? Because most of the reports I saw actually post-stated the ALJ's decision. Couldn't possibly have been considered by him. No, we're focusing on the April of 2007 opinion, which was before the judge during the hearing. There was some question as to whether he physically had a copy. They had a lot of difficulties with the electronic file at that time. But he was made aware of it and he was provided it all before that decision was made. What's the ER number for that one? The page number is 241 to 246. Thank you. Okay. So when the judge states that there was no opinion from Dr. Rappaport, he's just incorrect. And the other problem, significant problem, that we have with this particular treatment of medical source opinion evidence is that the ALJ seems to adopt the opinion of a Dr. McPhee. He's a one-time consultative examiner who did not review any medical records. So when we look at the 404.1527D factors, that would indicate that maybe that opinion shouldn't be entitled to such strong weight. But let's go beyond that. Dr. McPhee, the judge found that Mr. Chavin suffers from severe degenerative disc disease of the cervical spine, which is documented by MRI evidence. Dr. McPhee doesn't diagnose that at all. He diagnoses fibromyalgia. Yeah, it seemed like there's sort of a passing in the night of the doctors. And then, because he diagnosed fibromyalgia, the ALJ says, well, therefore that's at odds with the stenosis diagnosis, and therefore we reject Dr. Rappaport. Is that pretty much the logic? I'm not, well, the ALJ never addresses that discrepancy. The ALJ says he has degenerative disc disease, and I'm going to adopt the report of Dr. McPhee. He doesn't address that Dr. McPhee got the wrong diagnosis. I was just going to say, but does Dr. McPhee diagnose degenerative disc? No. No. Doesn't even reference cervical degenerative disc disease anywhere in his report. He goes for fibromyalgia, correct? Strictly fibromyalgia. And he took an x-ray of the low back and the hip. My client says, he asked my client why he's disabled. He says, because of my neck, I got severe degenerative changes in my neck, and Dr. McPhee diagnoses fibromyalgia. And he takes an x-ray of the hip and the low back. And the judge doesn't seem to have any problem with it and never even addresses it. At a minimum, he's got to address that evidence. Lastly, on the medical source opinion evidence, we do have the opinion of the primary care physician. The judge had concerns because, from these particular records, one can't tell if physical examinations were actually performed. I can see that one can't tell whether actual physical examinations were performed. But the doctor had the MRI. The doctor had the orthopedic surgeon's records. This Dr. Hunter? Dr. Steink. Oh, that's Dr. Steink. Yes. So he had the records before him. He's been treating the claimant for years and years. Nothing changes on this severe degenerative disc disease from 03 forward. He's told, look, you're going to need a four-level fusion. It is a very invasive procedure. We're going to fuse your neck. You may have a worse outcome. You may be worse than you are today if we do the surgery. Seriously, though, even as late as 2007, Dr. Rapoport is still suggesting and recommending noninvasive treatment. He's recommending a very conservative treatment. Absolutely. Which seems to be at odds with what the other doctor is saying. And that's four years after you claimed that he's disabled. I don't think they're at odds. I think the doctors are aware that the only eventual treatment is this four-level fusion. But they don't want to do it because it's so invasive, because it has a high failure rate, because it could make him worse. I mean, the risks of a four-level fusion include paralysis, death, and, you know, quite frankly, these are not very successful surgeries when you're talking about the neck. Personally, I wouldn't do that. And I don't think that that shows an individual's not disabled. Doctors don't want to replace knees unless you're of a certain age. There are lots of procedures they don't want to do. But just because they don't want to do the surgery doesn't mean the impairment is not disabling. Moving on, and I do see I have about a minute left before I hit my mark. With respect to the subjective complaints, you know, he's established that he suffers from an impairment that's expected to cause some degree of the pain that he alleges, and the judge finds it to be excessive. But you can't reject excessive pain strictly because the ALJ believes there's a lack of objective evidence. And that's really the cotton rule, and that's set in stone in the Ninth Circuit. So when you look at all the other reasons, they don't amount to very much. We're not hitting the clear and convincing, even specific and legitimate reasons, for rejecting claimant's testimony. And I'd refer the Court to the briefing on that so that I can reserve my four minutes. If you may. Thank you. Good morning. May it please the Court, I'm Jennifer Randall on behalf of the Commissioner for Social Security. Chauvin's arguments in this case blur together two different and distinct types of evidence. Evidence that was before the ALJ, and evidence that Chauvin solicited and submitted only after the ALJ's decision. As discussed in the Commissioner's brief, the record before the ALJ provided substantial evidence to support the ALJ's decision, and the ALJ's decision is legally sound. With regard to the new evidence that Chauvin solicited and submitted only after the ALJ's decision, the statute limits the Court's review of this evidence and requires Chauvin to show that the evidence is material and that he has good cause for not soliciting and submitting it earlier. Chauvin can't meet those requirements in this case. He's also unable to establish that a subsequent agency decision is material as required by the statute. Unless there's somewhere else that the Court would like me to begin, I wanted to start by addressing the new evidence that was solicited and submitted after the ALJ's decision. Obviously, an ALJ can't consider evidence that isn't before him. And in fact, the statute limits the Court's review of the ALJ's decision. But the new evidence would include what? Well, Your Honor, there are several types of new evidence here. We have new opinions from Dr. Rapoport and Dr. Steinck. We have a functional capacity evaluation that was performed by a physical therapist, Mr. Goldstein, who met Chauvin only after the ALJ's decision. And then throughout his reply brief and opening brief in this case, Chauvin is citing to treatment records, all of which post-state, or many of which, I should say, post-state the ALJ's decision. So we have both opinions, a functional capacity evaluation by a physical therapist, and treatment records. The statute governing judicial review provides for two different and distinct types of review. Under Sentence 4 of 42 U.S.C. 405G, the Court can review the final agency decision for alleged substantive errors. Under Sentence 6 of Section 405G, the Court can consider requests to remand for evaluation of new evidence. Under Sentence 4, the Court's review is limited to the record, which the statute defines as the evidence upon which the findings in the decision were based. I understood the argument to be that Mr. Chauvin's primary argument is under Sentence 4 and he doesn't believe that the record supports the final decision and that an alternative argument would be remand under Section 6. So that's those are not inconsistent, correct? Well, Your Honor, as you've characterized it, that would not be inconsistent, but as he's presented it. Therefore, we would only, of course, look at the record that was before the ALJ. That's correct. If he's solely relying on the evidence that was before the ALJ to challenge the ALJ's decision, then we would be in agreement. But he has relied throughout his briefs on evidence that postdated the ALJ's decision. Well, I think we understand the limits of an administrative record, and we're only looking at what's in the record before the ALJ for making that determination. So on that point, I do have a question that in which the record doesn't make a lot of sense to me about Dr. McPhee's evidence and the fibromyalgia. It seems like we have doctors that are talking past each other, and yet the issue here is the neck, the spinal stenosis or spondylitis, two different conditions. And then we have Dr. McPhee taking magnetic or X-ray images of the lower back and saying it's a fibromyalgia problem. So how do you square that? I mean, how can that be a contradiction of Dr. Rapoport when Dr. Rapoport doesn't even suggest there is a fibromyalgia problem? Well, Your Honor, first of all, I'm not sure that Dr. McPhee diagnosed fibromyalgia. I think that he noted in his report tender points consistent with a pattern of fibromyalgia, but I don't believe he actually ---- Well, that's splitting hairs. I mean, had fibromyalgia come up anywhere before? I don't believe it had, Your Honor, but ---- So all of a sudden it appears on the scene, but only with Dr. McPhee, correct? That is correct, Your Honor. The other point ---- And it's like going to the doctor and I say, you know, I've got this neck pain, and the doctor said, you know, you've got an ingrown toenail. I said, well, that may be, but I've got this neck pain. So that's where I'm having this disconnect in the record. Chauvin did not only report neck pain in this case. During the administrative hearing, he testified to, I believe, neck and back symptoms. And when he met with Dr. McPhee, he reported that care providers had been looking at both his neck and his back. And so I don't believe that it was unreasonable of Dr. McPhee to look at X-rays of Chauvin's back. Moreover ---- Although it may be right that it's not improper for him to look at his lower back and say, okay, I don't think there's much here. But it means that McPhee has sort of missed the problems with the neck. And so he may not have given us a complete picture of what Mr. Chauvin looks like in light of his neck problems if McPhee looks at the back and says, okay, there's something there, but not very much. I'm not impressed. Your Honor, I don't think that he missed anything in assessing Chauvin's functional abilities. That is really what he was looking at when he conducted his examination. He was looking at Chauvin's ability to perform specific activities. He was looking at things like whether ---- Right, but if you're going to assess his functional activities, you'd like to know that he was thinking about his neck during that time and not just his lower back. And I don't think he was thinking solely about Chauvin's lower back. He does mention in his report that Chauvin mentioned both neck and lower back symptoms. I think then his examination went to Chauvin's overall functional abilities. And I think it's significant that his findings on examination are consistent with the findings that were made by the neurologist, Dr. Hunter, who specifically evaluated Chauvin for his neck and noted findings such as normal sensation, normal strength, normal coordination, no atrophy or weakness, normal gait. So these findings by different doctors, although they're coming up with different diagnoses, all are pretty consistent in indicating generally normal examination results. And then in this case, Dr. McPhee's opinion that Chauvin retained the ability to do medium work is also buttressed by the opinions of Dr. Morelos and Dr. Mullen, state agency doctors who looked at the treatment records in this case and based on their assessment, opined consistent with Dr. McPhee's opinion that Chauvin retained the ability to do medium work. So because Dr. McPhee's opinion was supported by his examination findings and because it was consistent with other evidence in the record, including examination findings by Dr. Hunter and also the opinions of Dr. Morelos and Dr. Mullen, it was reasonable for the ALJ to give Dr. McPhee's opinion weight. With regard to the opinions from Dr. Rapoport that were before the ALJ, there are a few points that I'd like to address there. First of all, opposing counsel started off by saying that in 2007, Dr. Rapoport opined that Chauvin's impairments would prevent him from working on a regular and continuing basis. But if you look at page 240 of the record, the first question on that checkmark style form, the question is, in your opinion, does claimant suffer impairments that would prevent him from performing work eight hours a day, five days a week, on a regular and continuing basis? And Dr. Rapoport checked no. He did not check yes. What's the date of that form? That form is dated April 2007. Now, Dr. Rapoport... Governor, I thought it was two. No, Your Honor. That is in April 2007. I think he makes the seven with the cross across the base of it. And so the opinion before the ALJ is, as the ALJ accurately stated in his decision, an opinion that Chauvin's impairments would not prevent him from working on a full-time basis. The ALJ reasonably found that this response by Dr. Rapoport was inconsistent with his prior statement in 2005, that disability benefits would be appropriate. The ALJ also reasonably found that Dr. Rapoport's opinion about extreme limitations in funding... But can I go back? He said there would be certain restrictions, and then it seems to me that based on those restrictions, the vocational person says, well, with those restrictions, then we have a problem. We don't have, you know, just an eight-hour-a-day able-bodied person out to the job site. So he doesn't really just say he can work, but he says he can work with restrictions, correct? That is correct, Your Honor. And the ALJ did address those restrictions, but I think that one of his findings was that Dr. Rapoport's response to this first question on the form, in which he opined that, in his view, Chauvin's impairments wouldn't prevent him from working, was inconsistent with the doctor's prior statement that Social Security benefits would be appropriate. Sort of a facial inconsistency. Can I stop on that? I looked at that pretty carefully, but it seems to me that that's not a medical opinion. I mean, first of all, we're forever, as lawyers, trying to keep out doctors talking about legal issues. So the fact that he might have made a statement, you know, you can apply for Social Security or you might, that's not a medical opinion. And I don't see how that can be kind of put in the bad box against Dr. Rapoport when he's basically, like, advising a patient, you know, you ought to look into Social Security disability. What is the basis for characterizing that as a medical opinion? Your Honor, I think you're correct that it's a vocational opinion, and I think that what the ALJ was noting was that it was consistent with the prior vocational opinion that Social Security benefits would be appropriate. So he was finding an inconsistency on the face of those two opinions, but then he went further and he addressed the functional limitations opined by Dr. Rapoport. He reasonably found that those opinions were inconsistent with the doctor's treatment notes, which showed only conservative treatment and generally normal examination results. Dr. Rapoport generally prescribed, as you noted, conservative treatment. Chauvin was not taking prescription pain medication for much of the period in this case, and Chauvin was never referred to a pain management specialist for intractable pain. No one recommended immediate or urgent surgery. In fact, Dr. Rapoport said he would only recommend surgery if Chauvin's symptoms became intolerable or if he developed neurological deterioration, indicating that neither of those conditions were present. And Chauvin, in fact, admitted during the administrative hearing at page 316 of the transcript that Dr. Rapoport had never recommended surgery, indicating that neither of these conditions had ever actually materialized. So you don't have to be basically bedridden to be disabled. Correct? That is correct, Your Honor, and yet what the ALJ's task is is to look at what the claimant's functioning is and whether that functioning would allow them to do, if not the full range of work, a range of work that would allow them to, you know, be employed. Based on the opinion given by Dr. Rapoport with the restrictions, was there vocational testimony that said that those restrictions would make him disabled or unable to perform normal work of his nature? I believe so, Your Honor, and yet the ALJ reasonably discounted Dr. Rapoport's opinion and reasonably found that Chauvin retained the ability to do medium work, which was supported by the treatment record, by evidence that Chauvin's condition really hadn't changed since 1999 when he was working, and by other inconsistencies that the ALJ noted between Dr. Rapoport's opinion and his treatment notes and between Chauvin's own statements and the record as described in our brief. I see that I'm running out of time, Your Honor, and so unless the Court has further questions, in sum, I just wanted to again request, as the Court seems to understand, that we're asking that the ALJ's decision be reviewed solely based on the evidence before the ALJ. As described in our brief, we don't believe that the subsequent agency decision is material in this case because it pertains to a different time period and because it's based on different evidence, all of which is dated after the ALJ's decision in this case. Thus, Chauvin hasn't met his burden under Sentence 6 to show materiality, and we would respectfully ask the Court to affirm the District Court's decision affirming the final decision of the Commissioner. Thank you. Thank you. You have some rebuttal time. Thank you, Your Honor. For a minute, I thought counsel was going to agree that Dr. Rapoport's residual functional capacity assessment would be entitled to wait, and as you pointed out... Wishful thinking. As you pointed out, that would have, pursuant to vocational expert testimony, resulted in an award of benefits. But they keep using the terms that Dr. Rapoport's opinion is inconsistent with the records. It's inconsistent, but nobody's pointed out what the inconsistency is. They say he doesn't have neurological deficit. That's not inconsistent. Dr. Rapoport says that Mr. Chauvin can sit more than two hours, less than three hours, stand more than two hours, less than three hours, walk more than two hours, less than three hours, lift and carry less than 10 pounds. How is that inconsistent? He has severe multilevel degenerative disc disease with nerve root compromise. There is no inconsistency. Counsel also is limiting to what was before the ALJ, and keeps referencing what wasn't before the ALJ. But let's look at what was actually before the ALJ. We had the 2003 cervical MRI, which shows moderate to marked bilateral neuroforaminal narrowing at C3-4, as well as 4-5 and 5-6, with persistent canal compromise. And that's at ER 131, 161 and 219. We have the records from Dr. Hunter, who they say it's conflicting, but it's not. Dr. Hunter says, hey, he's got severe degenerative disc disease, and it's causing him severe neck pain. And that's at TR 222-223. You have Dr. Rapoport's records, and you also have his letter of support at 209, which is dated August of 2005. You have all the physical therapy records were before the judge. The physical therapists use terms as he's debilitated, he has difficulty carrying on activities of daily living in a timely manner. You have Dr. Rapoport's residual functional capacity assessment at 241-246. You have a May 7, 2007, MRI confirming the severe stenosis at 249. You also have the primary care physician's record, Dr. Steink, who also assessed the residual functional capacity, very similar, if not identical, to that of Dr. Rapoport, and the judge had that before him as well. That's the evidence that the judge didn't give proper weight to. You know, to say that I'm accepting Dr. Rapoport, I'm not accepting Dr. Rapoport, I'm going to accept Dr. McPhee, just doesn't meet the burden. The judge has to set forth a clear rationale explaining how he handled each of these items of evidence. And let's get back to the credibility, because I don't want to lose that in our discussion. Mr. Shaven was a highway adjourner, he was a president of a company, and he worked 30 consecutive years except for he had one and a half year where he didn't work, and that was in 1985 when he had a severe motor vehicle accident, his head hit the windshield of the car, and that's where they think some of these problems all come from. Other than that year and a half, he's always worked. Why all of a sudden would there be any reason for him to stop working other than what he's telling us, which is my pain became so severe, I was unreliable, I was missing time from work, I had to rest and lie down and get some pain off of my neck. If I stand too long, my neck hurts. If I walk, it jars my neck, even sitting and holding my head upright causes pain. I need to recline, I need to get the weight off my head, that's why I can't work. That's what he told the judge, that matches all the records. There's no evidence of any exaggeration or malingering. To reject his testimony, there must be clear and convincing reasons supported by the record as a whole, and that clear and convincing standard is the most stringent standard of proof in social security law. Thank you.
judges: McKeown, Clifton, Bybee